OPINION
David A. Saphire appeals from a judgment of the Xenia Municipal Court, Traffic Division, which found him guilty of operating a motor vehicle at fifty-five miles per hour ("m.p.h.") in an area with a forty m.p.h. posted speed limit.
The record reveals that on November 18, 1999 around 8:30 a.m., Patrolman James Williams of the Sugarcreek Township Police Department observed Saphire driving northbound on Wilmington Pike, north of East Briggs, at a speed that Williams estimated to be in excess of the forty m.p.h. posted speed limit. Williams sighted his laser near Saphire's front license plate, activated the laser, and "locked in" the vehicle traveling at fifty-five m.p.h. at a distance of four hundred ninety-six feet. Williams initiated a traffic stop of Saphire's vehicle and eventually issued him a citation for violating R.C. 4511.21 by driving "over limits" at fifty-five m.p.h. in an area with a posted speed limit of forty m.p.h.
A trial was held on February 29, 2000. The state presented the testimony of Williams. The defense presented the testimony of Michael D'Amico, a retired police chief with thirty years of law enforcement experience, who stated that he had re-enacted the driving events, as described to him by Saphire, in the same vehicle that Saphire had been driving when he had received the speeding ticket, and that he had only been able to obtain a maximum speed of forty-nine or fifty m.p.h. at the point where Williams had allegedly "clocked" Saphire. Saphire testified also and denied that he had been driving in excess of the posted speed limit.
Both sides filed post-trial briefs. In a judgment filed April 14, 2000, the trial court found Saphire guilty of the alleged offense and fined him thirty-five dollars plus court costs.Saphire now appeals the trial court's judgment. He advances five assignments of error. Because the issues raised in the fourth and fifth assignments of error are interrelated, we will address them together. The state has not filed a brief responding to Saphire's assignments of error.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING THE APPELLANT'S MOTION TO DISMISS.
The speeding ticket issued to Saphire states that he violated R.C.4511.21 by traveling fifty-five m.p.h. in an area with a forty m.p.h. posted speed limit. Based upon our review of the statute, we conclude that he was charged with violating R.C. 4511.21(C) which states that it is prima-facie unlawful for a person to exceed any speed limitation declared by a local authority. Based upon the record in this case, it appears that such violation was a minor misdemeanor. See R.C.4511.99(D)(1)(a). R.C. 2945.71(A) requires that a person charged with a minor misdemeanor must be brought to trial within thirty days after the service of summons.
The speeding ticket, which included a summons, was issued to Saphire on November 18, 1999. On November 23, 1999, Saphire filed a written "time waiver" of unlimited duration waiving the speedy trial requirement of R.C. 2945.71. On January 31, 2000, he filed a written motion with the court withdrawing his speedy trial waiver. On February 1, 2000, the trial court set a trial date for February 29, 2000.
On February 29, 2000, prior to the trial, Saphire filed a motion to dismiss the case, arguing that the state had failed to comply with the speedy trial requirement of R.C. 2945.71. The trial court overruled his motion in open court at the beginning of the trial.
Saphire now argues that the trial court erred in overruling his motion to dismiss. He states that five days passed between the date that he was issued the summons and the date that he filed his speedy trial waiver and that twenty-nine days passed between the date that he withdrew his speedy trial waiver and the date that he was brought to trial. Adding these numbers together, he concludes that thirty-four days passed and thus that the thirty day speedy trial requirement of R.C. 2945.71(A) was violated by the state.
The supreme court has stated:
 Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time.
(Emphasis added.) State v. O'Brien (1987), 34 Ohio St.3d 7,516 N.E.2d 218, paragraph two of syllabus. Thus, when a defendant properly revokes his speedy trial waiver, the state must bring him to trial within a reasonable time and the time requirements set forth in R.C. 2945.71 no longer apply. State v. Pusey (July 11, 1991), Shelby App. No. 17-90-1, unreported.
The Supreme Court has set out a balancing test in which the following factors are weighed to determine whether a defendant was brought to trial within a reasonable time: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. O'Brien, 34 Ohio St.3d at 10, 516 N.E.2d at 221, citingBarker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192. We must first consider the specific length of the delay because "`[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" Id.
There were twenty-nine days that passed between the date Saphire revoked his speedy trial waiver and the date that Saphire was brought to trial. After reviewing the record, we do not believe that the delay of twenty-nine days was presumptively prejudicial. Indeed, the twenty-nine days were within the statutory thirty day speedy trial requirement for a person charged with a minor misdemeanor. Thus, we need not inquire into the other factors of the test.
The first assignment of error is overruled.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ADMITTING THE EVIDENCE OF THE READING OF THE ULTRALITE 20-20 LASER UNIT[.]
Saphire argues that because the trial court never heard expert testimony on the laser device, it erred in taking judicial notice of the accuracy and dependability of the device.
At trial, Saphire objected to Williams' testimony regarding the reading received from the laser device. He argued that before the testimony could be admitted, the state needed to offer expert testimony regarding the accuracy and dependability of the laser device. He also argued that no court had ever recognized this particular laser device as being scientifically accurate for speed measurement. The trial judge overruled his objection and noted that she had "attended some training on this issue." Following the close of the state's case in chief and at the end of the trial, Saphire made motions for a Crim.R. 29 acquittal. The trial court overruled both motions.
In its judgment entry, the trial court stated:
 As far as recognition of this [laser] unit as a speed detection device, the Court itself has received training from the experts utilized by the National Highway Traffic Safety Administration (NHTSA), Dr. P. D. Fisher, Ph.D., P.E., Department of Electrical 
Computer Engineering, Michigan State University, East Lansing, Michigan at a recent seminar sponsored by the Association of Municipal/County Judges of Ohio. Judges in the State of Ohio were taught the basics of such lidar devices and the fact that they were reliable measuring devices for speed intervention. The Court is not persuaded that the cases cited by the Defense remove from this Court's consideration the Ultralight 20/20 Model 200 laser unit or that further requirements are imposed on the Prosecution because of the cases cited by the Defense.
"[T]he scientific accuracy of a laser device is the type of fact that can be judicially noticed." Columbus v. Dawson (Mar. 14, 2000), Franklin App. No. 99AP-589, unreported. Some courts have taken judicial notice of this fact. See, e.g., State v. Dawson (Dec. 21, 1998), Madison App. No. CA98-04-021, unreported, dismissed (1999), 85 Ohio St.3d 1463,709 N.E.2d 170 (finding that because "the trial judge [had] heard expert testimony in a prior case concerning the accuracy and dependability of the LTI 20-20 laser device, he could take judicial notice of th[at] fact in the present case"); State v. Bell (Jan. 26, 1998), Madison App. No. CA96-07-027, unreported, dismissed (1998), 82 Ohio St.3d 1410,694 N.E.2d 74 (stating that "[a] trial court is allowed to take judicial notice of the reliability of the LTI 20-20 laser based upon a trial court's prior case pursuant to Evid.R. 201(B)(2)"); State v. Reck (Dec. 21, 1994), Darke App. No. 1352 CA, unreported (noting that the trial court, after hearing expert testimony about the LTI 20/20 laser device in that case, had "stated that henceforth the scientific reliability of the LTI 20/20 as a speed detection device would be a matter of judicial notice"). The fact that a court takes judicial notice in one jurisdiction, however, cannot serve as the basis for taking judicial notice in another jurisdiction. Columbus v. Dawson, supra, citing Statev. Doles (1980), 70 Ohio App.2d 35, 38, 433 N.E.2d 1290, 1292.
"In order for judicial notice to be taken, the fact must be one of common knowledge throughout the jurisdiction of the court." Doles, at paragraph one of syllabus. In the absence of expert testimony in the present case, and in the absence of any expert testimony in a previous case before that court or a court of binding authority upon that court regarding the accuracy and dependability of the laser device, such fact is not of common knowledge within that jurisdiction and thus cannot be the subject of judicial notice. Columbus v. Dawson, supra; see Doles,70 Ohio App.2d at 38, 433 N.E.2d at 1292.
It is not entirely clear, based upon the record, what type of laser device was used to measure Saphire's speed. In a "Laser Statement to Court" filled out by Williams, the device is described as a "Laser LTI 20-20 UltraLyte[.]" Williams called the device an "Ultralite 20/20 Model 200 laser" during his testimony at trial. Prior to the start of the trial and on the record, Saphire's attorney raised an issue about whether the device was an "LTI 2020" or an "LTI 2020 Model 200." In response, the prosecutor stated that the LTI 2020 and LTI 2020 Model 200 were the same device. In his post-trial brief, the prosecutor referred to the device as an "LTI 20/20 Laser[.]" In Saphire's post-trial brief, his attorney states that Williams "originally misidentified the model of the laser unit to the Court and the Defendant by filing a written document claiming that he had used an LTI 20/20 laser unit when the truth was that he used an Ultralite 20/20 laser unit." The trial court referred to the device as an "Ultralight 20/20 Model 200" laser in its judgment entry.
Although the accurate name of the laser device used by Williams is unclear, it appears that neither our court nor the supreme court has taken judicial notice of any laser device with one of the names listedsupra. Further, there was no indication in the record or in the trial court's entry that it had previously heard expert testimony regarding this particular laser device.
Because there is nothing in the record to show that the trial court has ever received expert evidence on and determined that the laser device used in this case is dependable and accurate, and because it appears that no court of binding authority upon the Xenia Municipal Court has ever taken judicial notice of this laser device, we conclude that Saphire's second assignment of error is persuasive. See State v. Colby (1984),14 Ohio App.3d 291, 291-292, 470 N.E.2d 924, 925; State v. Freeman
(Cty.C. 1985), 24 Ohio Misc.2d 7, 9-10, 493 N.E.2d 571, 574.
The second assignment of error is sustained.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING THE APPELLANT'S MOTION TO COMPEL DISCOVERY[.]
In a motion to compel discovery, Saphire requested, inter alia, a copy of the instructional manual for the laser device used by Williams. Prior to the start of the trial, the trial court addressed this motion on the record.
According to the prosecutor, Saphire's attorney was not given a copy of the instructional manual for the laser device "because the [Sugarcreek Township Police Department] felt that it was not sure it could copy and deliver" the manual because it was "copyright protected." The prosecutor stated, however, that during his discussions with Saphire's attorney at the pretrial conference, he had informed Saphire's attorney that the manual was available to him during business hours at the police department for his inspection and review and for him to "copy one way or another[.]" Saphire's attorney told the trial judge that he had been told that he was not permitted to copy the manual because it was "copyright protected." The trial judge asked Saphire's attorney whether he had gone to the police department and asked to see the manual. Saphire's attorney responded that he had not gone to the police department to request to see the manual because the prosecutor had told him it was copyright protected. After hearing these versions of the events, the trial judge overruled Saphire's motion to compel discovery, finding that the state had complied with the requirements of Crim.R. 16(B)(1)(c) and stating to Saphire's attorney, "unless I hear that the request was made at the police department after being told that the materials were there and having been refused to even photograph it, then I'm not going to find that [the state] violated anything. You knew where it was and * * * you did not make a further inquiry."
Saphire now argues that the trial court erred in overruling his motion to compel discovery of the laser device's instructional manual because such decision was "illogical and contradictory to the point of being bizarre." His attorney argues that it would have been "futile" for him to have gone to the police department after the prosecutor had told him that he would not be allowed to copy the manual.
Crim.R. 16(B)(1)(c) states, in part:
 Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books * * * available to or within the * * * control of the state, and which are material to the preparation of his defense[.]
The trial court apparently credited the prosecutor's version of the events regarding the discovery of the manual. Because credibility determinations are matters that are solely within the province of the trier of fact, we will not interfere with that determination. McCray v.Clinton Cty. Home Improvement (1998), 125 Ohio App.3d 521, 525,708 N.E.2d 1075, 1077; State v. Coker (1984), 15 Ohio App.3d 97, 100,472 N.E.2d 747, 750.
According to the prosecutor, he told Saphire's attorney that the instructional manual was available at the police department for him to inspect and copy. The trial court correctly concluded that such statement complied with the requirements of Crim.R. 16(B)(1)(c). Thus, Saphire's argument that the trial court erred in overruling his motion to compel discovery is not persuasive.
The third assignment of error is overruled.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING THE RULE 29 MOTIONS OF THE APPELLANT[.]
 V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THE DEFENDANT GUILTY IN ABSENCE OF PROOF BEYOND A REASONABLE DOUBT THAT THE APPELLANT WAS OPERATING A VEHICLE IN EXCESS OF THE POSTED SPEED LIMIT.
Saphire argues that the trial court erred in overruling his Crim.R. 29 motions for acquittal and in finding him guilty because "the record was devoid of admissible evidence that [he] was operating his vehicle at a speed in excess of the posted limit[.]"
Under Crim.R. 29(A), a motion for judgment of acquittal may be granted if the evidence is insufficient to sustain a conviction on the offense charged. In reviewing the trial court's denial of a Crim.R. 29 motion, we must construe the evidence in a light most favorable to the state and determine whether such evidence, if believed, would convince a reasonable mind of the defendant's Cguilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
Williams testified that he had observed Saphire traveling "at a speed that [he] estimated to be in excess of the posted [forty m.p.h.] speed limit." The only evidence presented to show that Saphire was traveling fifty-five m.p.h. was the reading from the laser device. As we discussed, supra, the trial court should not have admitted the reading from the laser device because there was no expert testimony regarding the reliability and accuracy of the device. Thus, there was no admissible evidence that Saphire was traveling fifty-five m.p.h. Williams' estimate that Saphire was traveling "in excess" of forty m.p.h. is not sufficient to convince a reasonable mind beyond a reasonable doubt that he was traveling fifty-five m.p.h.
The fourth and fifth assignments of error are sustained.
The judgment of the trial court will be reversed and the defendant will be discharged.
 _________________ WOLFF, J.
GRADY, J. and GLASSER, J., concur.
(Hon. George M. Glasser sitting by assignment of the Chief Justice of the Supreme Court of Ohio).